# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

**MATTHEW DIONYSIUS**,
*Individually, on behalf of himself and on behalf of others similarly situated*,

    Plaintiffs,

v.

**HANKOOK TIRE MANUFACTURING TENNESSEE, LP,**
*a Tennessee Limited Partnership,*

    Defendant.

Case No. 3:20-cv-00091

JURY TRIAL DEMANDED

FLSA Opt-In Collective Action

## JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT AND INCORPORATED MEMORANDUM

Plaintiff Matthew Dionysius ("Named Plaintiffs") and Defendant Hankook Tire Manufacturing Tennessee, LP ("Defendant") (together, "the Parties") file this Joint Motion to Approve Settlement Agreement and Incorporated Memorandum in Support (the "Joint Motion"). In support of their Joint Motion, the Parties respectfully state as follows:

**I.    Relevant Procedural and Factual History.**

This case was brought under the Fair Labor Standards Act ("FLSA"). Named Plaintiff alleges that Defendant failed to pay him and others all overtime compensation due. (*See generally* ECF No. 1). Defendant denies these allegations and further denies that it violated the FLSA in any respect whatsoever (*See generally* ECF No. 29).

The Parties were able to reach an agreement on conditional certification and notice was mailed to the putative class members on November 8, 2021. At the end of this notice period there

1

were a total of 262 individuals, including Named Plaintiff, who joined this action as party plaintiffs. At the conclusion of this notice period, Defendant then agreed to provide Named Plaintiff and Opt-in Plaintiffs with time and pay data to assist with the facilitation of a possible settlement of this matter. Damages were then calculated for Named Plaintiffs and the Opt-in Plaintiffs and an initial settlement demand was sent to Defendant. The Parties then mediated with Mr. M. Reid Estes, Esq. on June 7, 2022, 2022. This mediation resulted in this settlement.

The settlement reached in this matter totals $205,000.00. This number is broken down as follows: $90,137.08 has been allocated as back pay to Named Plaintiff and the Opt-in Plaintiffs, $5,000.00 has been allocated for a service award to Named Plaintiff, and $99,862.92 has been allocated to attorneys' fees and $10,000.00 for costs and expenses.

Because the Parties wish to avoid expending additional resources on this matter, they now jointly request that the Court enter an order approving the agreed-upon resolution. This resolution releases and resolves any and all claims relating to this matter. The Parties hereby submit their proposed agreed-upon resolution to the Court.[1] *See Steele v. Staffmark Investments, LLC*, 172 F. Supp.3d 1024, 1026 (W.D. Tenn. 2016) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). The Parties hereby respectfully request that the Court review their agreed-upon resolution under the standards set forth in *Lynn's Food Stores* and the FLSA.

---

[1] The Sixth Circuit has not decided whether all bona fide FLSA settlements must be judicially approved. The Parties submit that the reasoning employed in *Martin v. Spring Break '83 Products, LLC is* compelling as both parties are represented by competent counsel and the risk of unequal bargaining power is greatly diminished. Moreover, there is no textual or statutory basis for requiring judicial approval of FLSA settlements. As such, the Parties urge the Court to adopt the reasoning of *Martin* and find that judicial approval of this settlement is unnecessary. *See Askew v. Inter-Cont'l Hotels Corp.*, 2022 WL 3161927, *7 (W.D. Ky. Aug. 8, 2022).

## II. Terms of the Proposed Settlement.

### A. Settlement Amount and Allocation.

The Settlement Agreement provides that Defendant will pay the total gross sum of $205,000.00 which sum includes Plaintiffs' attorneys' fees, costs, expenses and service award to the Named Plaintiff. The details of the agreement are set forth in the Settlement Agreement, attached as *Exhibit A*. From the gross settlement amount, $90,137.08 is allocated as back pay to Plaintiffs,[2] and $5,000.00 has been allocated to Mr. Dionysius as a service award for work in this litigation and as consideration for a full release of any and all claims he may have against Defendant.

### B. Release of Claims.

In exchange for the payments to be made under the Settlement Agreement, Plaintiffs have agreed to dismiss this action with prejudice. Further, Named Plaintiffs and Opt-in Plaintiffs, on behalf of their heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, have agreed to release and discharge Defendant from any and all known and unknown claims for overtime compensation, minimum wages, liquidated damages, penalties and interest under the FLSA or applicable state laws (including statutory and common law claims for breach of contract, unjust

---

[2] For Opt-in Plaintiffs Aaron Cunningham, AJ Nunley, Austin Berry, Beverly Hale, Cathey Ellison, Craig Bass, Darrice Vines, Darrin Burrus, Derrick Henson, Dominique Shamell, Ernest Little, George Diggs, Ginger Tanner, James Killebrew, Jasmine Tashaun Watts, Javonne Smith, Jennifer Utley, Joe Wesley, John Hawkingberry, Jr., Justin Miller, Justin Napper, Kayla Danielle, Mclean, Keosha Willis, Kerry Futrell, Kierra Ogburn, Lakisa Shenea Pardue, Lance Wheeles, Lisa Marie Serna, Marvin Boradus, Pamela Taylor, Reginald Lucas, Ronald Spencer, Shamya O'Neal, Shaniqua Darrett, Stephanie Mullins, Sylvia (Hedrick) Parish, Warren Jones, Jr., it was mathematically impossible for overtime to have been worked during their employment in the statutory period. For these individuals, a $5.00 minimum has been established for a release of their FLSA claims.

3

Case 3:20-cv-00091   Document 119   Filed 09/02/22   Page 3 of 15 PageID #: 678

enrichment or other common law claims relating to wage and hour issues) alleged in or arising out of the acts alleged in this action.

## MEMORANDUM OF LAW

The Parties have reached a settlement which fairly and reasonably resolves the Parties' claims and defenses. The agreement was negotiated at arm's length between counsel through mediation involving all parties. As such, the Court should enter an order approving the settlement.

**I.     The Proposed Settlement Fairly and Reasonably Resolves the Parties Claims and Defenses.**

   **A.     Standard for Settlement Approval**

Although it is not clear in this Circuit that court approval of a settlement of FLSA claims is required for a settlement to be binding, parties are certainly free to seek court approval of a private lawsuit brought under Section 216(b). *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir. 1982). In reviewing an FLSA settlement, the court should scrutinize the proposed settlement for fairness and determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1355; *accord Simmons v. Mathis Tire & Auto Serv., Inc.*, 2015 WL 5008220, *1 (W.D. Tenn. Aug. 20, 2015); *Wills v. Cellular Sales of Tenn., LLC*, 2014 WL 8251539, *1 (E.D. Tenn. Aug. 18, 2014); *Bartlow v. Grand Crowne Resorts of Pigeon Forge*, 2012 WL 6707008, *1 (E.D. Tenn. Dec. 26, 2012). When it appears that a settlement "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages[] that are actually in dispute," the court should "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores Inc.*, 679 F.2d at 1354. Additionally, a court presiding over an FLSA suit "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

### B. A Bona Fide Dispute Exists Over Liability and Damages.

In reviewing the settlement of a plaintiff's FLSA claims, the district court must "ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." *Rotuna v. W. Customer Mgmt. Grp. LLC*, 2010 WL 2490989 (N.D. Ohio June 15, 2010). The existence of a bona fide dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id; accord Ochs v. Modern Design, Inc.*, 2014 WL 4983674, *2 (N.D. Ohio Oct. 6, 2014). "A bona fide dispute has to do with whether some issue of the employer's liability is 'actually and reasonably in dispute.'" *Athan v. United States Steel Corp.*, --- F.3d ---, 2021 WL 805430, *3 (E.D. Mich. Mar. 3, 2021) (citations omitted).

A bona fide dispute clearly exists here. This case was heavily litigated by the parties. Plaintiffs' claim they and others were not paid for all hours worked over forty (40) in each workweek due to: (a) compensatory work being performed prior to the start of the shift and (b) compensatory work being performed after the shift ended. Plaintiffs contend that they and others are entitled to overtime for these hours worked. Defendant specifically denies these claims and further denies that Named Plaintiff and Opt-in Plaintiffs are owed any additional overtime or other wages under the FLSA or any other laws.

In addition to the many disputes regarding Defendant's liability and potential collective decertification, the Parties have opposing views on other damages components such as: (1) how to calculate damages, (2) whether liquidated damages are available, and (3) whether a two-year or three-year limitations period applies. Defendant also maintains that it properly compensated all of its workers pursuant to its policies and procedures and all applicable law.

Although the Parties continue to firmly believe in the merits of their respective claims and defenses, given the time and expense associated with full-blown litigation and discovery, and the uncertainty of dispositive motion practice, decertification, and trial, the Parties agree that a compromise is appropriate at this stage of the litigation. They desire to resolve this case by way of a negotiated settlement payment by Defendant in exchange for releases of claims by Plaintiffs and dismissal of this case with prejudice in order to avoid the time and expense inherent in continued litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("Thus, when the parties [to the litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.").

**C.     The Settlement Is Fair and Reasonable.**

In addition to resolving a bona fide dispute between the Parties, the settlement achieved is fair and reasonable and should be approved for several reasons.

First, the proposed settlement arises out of actions for alleged unpaid overtime and other wages brought by Plaintiffs against their employer, and the present compromise is reasonable under the circumstances given the defenses and risks associated with continuing to litigate the claims in this case. The proposed Settlement provides a fair recovery to Plaintiffs considering that Defendant has: (1) reasonable arguments for why the Plaintiffs' potential recovery, if any, is minimal; (2) a chance of having this collective decertified—potentially with the claims of all but Named Plaintiffs being dismissed; (3) legitimate arguments that liquidated damages are not available; and (4) legitimate arguments that a two-year statutory period should apply.

Second, no collusion occurred between the Parties or their counsel. *See Schneider v. Goodyear Tire & Rubber Co.*, 2014 WL 2579637, *2 (N.D. Ohio June 9, 2015) (considering the
6

risk of fraud or collusion between the parties in determining whether to approve an FLSA settlement and concluding that because the parties had engaged in court-supervised negotiations, there was no such risk). Rather, this settlement was reached as a result of arm's-length negotiations between the Parties through experienced attorneys and a full-day mediation involving a neutral third-party mediator, M. Reid Estes, Esq. *See, e.g., Athan*, 2021 WL 805430 at *4 (finding no evidence of fraud or collusion in parties' FLSA settlement where parties reached an arms' length settlement over the course of a 12-hour mediation with an independent third-party mediator); *Fitzgerald v. P.L. Marketing, Inc.*, 2020 WL 3621250, *6 (W.D. Tenn. July 2, 2020) (recognizing there were "no concerns about fraud or collusion" where FLSA settlement was product of two mediation sessions with a respected third-party mediator).

Third, during the litigation and settlement of this action, Plaintiffs were represented by counsel who are experienced in handling wage and hour collective actions. Plaintiffs' Counsel have the experience to assess the risks of continued litigation and benefits of settlement and have done so in this action. Plaintiffs' Counsel also have a long-standing multijurisdictional practice representing both employees and employers in similar FLSA collective litigation. Defense counsel is likewise experienced in defending similar claims. Counsel for the Parties have advised their respective clients regarding the settlement and they have recommended judicial approval. Courts routinely give these recommendations weight. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as an indication of fairness); *Athan*, 2021 WL 805430 at *6 (recognizing opinions of class counsel and representatives favored approval of FLSA settlement).

Fourth, the range of possible recovery in this case was uncertain and the Parties had very divergent positions on liability overall and damages. As noted above, Plaintiffs were at risk of,

7

*inter alia*, recovering little or nothing due to difficult factual and legal questions and the possibility of decertification. "Given the uncertainty surrounding a possible trial in [these matters], the certainty and finality that comes with settlement [] weighs in favor of a ruling approving the agreement. Likewise, such a ruling promotes the public's interest in encouraging settlement of litigation." *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 7769033, *6 (N.D. Ohio Mar. 8, 2010); *see also Fitzgerald*, 2020 WL 3621250 at *6 ("Public policy favors settlement of collective actions.").

Fifth, the proceedings have advanced through initial pleadings, fact investigation and an informal and formal discovery period, permitting the Parties and their experienced counsel to: (i) collect, obtain, and review evidence; (ii) review and assess data and other information; (iii) assess evidence provided in support of the claims and defenses in this matter; (iv) evaluate their claims and defenses; (v) understand the scope of potential damages; (vi) consulting experts, and (vii) engage in negotiations with the mutual understanding that dispositive motion practice and the decertification motion process would be a difficult, costly, and an uncertain undertaking.

Sixth, the complexity, expense, and likely duration of the litigation should a settlement not have been reached weighs heavily in favor of finding that this settlement is fair and reasonable. Without question, if the case had not settled, the Parties would have spent significant time and resources briefing decertification and other dispositive motions. After the resolution of these motions, the Parties would have had to engage in expensive and extensive efforts to prepare pretrial submissions and prepare for trial in this matter while those motions were pending, and eventually, may have faced the prospect of an expensive, lengthy trial as well as likely post-trial motions and appeals.

Rather than take this path, the Parties directed their efforts toward an informed, efficient resolution of the claims. While a number of issues remain unresolved, the expansive discovery and fact investigation processes enabled counsel to critically assess the respective strengths and weaknesses of their case and reach the conclusion that settlement is in the Parties' best interests. The settlement eliminates the inherent risks both sides would face if this case were to continue. *See, e.g., Athan*, 2021 WL 805430 at *5 ("The Parties have compromised to avoid experiencing either extreme outcome—dismissal for Plaintiffs or an adverse judgment for Defendant. The Parties' settlement is a reasonable means for the Parties to minimize or altogether avoid future time expended, risks, and litigation costs."). Under these circumstances, the settlement is fair, reasonable, and adequate for Plaintiffs, and the Court should approve it.

## II. Plaintiffs' Counsel's Requested Award of Attorneys' Fees and Costs Is Reasonable and Should Be Fully Granted.

Courts encourage litigants to resolve attorney fee issues by agreement. "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *accord Melgar v. OK Foods*, 902 F.3d 775, 778 (8th Cir. 2018) (recognizing tradition of encouraging settlement of attorneys' fees between private litigants).

Here, the proposed $109,862.92 award of attorneys' fees and costs is fair, reasonable, and should be approved. The amount does not fully compensate Plaintiffs' Counsel for the time and effort spent in litigating this matter, which would have exceeded $140,000.00, as Plaintiffs' Counsel sought to reserve as much of the settlement payment as possible for distribution to Plaintiffs. Defendant does not oppose the payment of the agreed-upon amount of attorneys' fees, litigation expenses, and costs of $109,862.92. As noted above, this will not reduce any Plaintiff's recovery. This amount is appropriate as "the attorneys' fees provision[] of the . . . FLSA exist[s]

9

to enable Plaintiffs to employ reasonably competent lawyers without costs to themselves if they prevail and, thereby, to help ensure enforcement of the substantive provisions of the FLSA." *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n., Local 307 v. G & M Roofing & Sheet Metal Co., Inc.*, 732 F.2d 495, 502 (6th Cir. 1984).

The only relevant factor for awards of attorneys' fees and costs to class plaintiffs' counsel is that the award "be reasonable under the circumstances." *Rawlings v. Prudential-Bache Property*, 9 F.3d 513, 516 (6th Cir. 1993); *see also Blum v. Stenson*, 465 U.S. 886, 893 (1984). As the Supreme Court has recognized, without the class/collective action mechanisms, individuals with small claims lack the economic resources to vindicate their rights. Without compensation to attorneys who are willing to undertake the inherent complexities and uncertainties of class and collective action litigation, enforcement of federal and state wage and hour laws would be jeopardized. *See Eisen v. Carlisle and Jacqueline*, 417 U.S. 156, 161 (1974). Thus, attorneys taking on class and collective actions enable litigants to pool their claims, provide an invaluable service to the judicial process and society as a whole.

The complexity of this case and the novelty of the issues presented required a high level of skill and knowledge of wage and hour collective actions. It is respectfully submitted that Plaintiffs' Counsel have unique skills and qualifications in the area of wage and hour litigation and maintain nationwide class and collective action wage and hour practices. As a result, Plaintiffs' Counsel understands first-hand the risks, difficulties, and costs associated with actually preparing and taking a collective action to trial, as opposed to negotiating a favorable settlement.

10

Case 3:20-cv-00091   Document 119   Filed 09/02/22   Page 10 of 15 PageID #: 685

Plaintiffs' attorneys' fees and costs are reasonable given the result obtained,[3] time expended, and time yet to be expended in administering the proposed settlement. *See Mclain et. al. v. First Acceptance Corp.*, No. 3-17-cv-00408 [ECF No. 57] (M.D. Tenn. 2018) (Crenshaw J./Holmes M.J.) (approving attorneys' fees and costs approximating 66% of the total settlement amount); *Wilson et. al. v. MMR Senior Alliance Corp et. al.*, No. 3:17-cv-1412 [ECF No. 56] (M.D. Tenn. 2018) (Crenshaw J./Holmes M.J.) (approving attorneys' fees and costs approximating 50% of the total settlement amount); *Macklin v. Delta Metals Co., Inc.*, No. 2:08-CV-02667, 2011 WL 13070420 (W.D. Tenn. July 6, 2011) (McCalla, J.) (awarding $48,802.02 in attorneys' fees and costs and $300.15 in damages). "When the maximum recovery for an employee is relatively small because the unpaid overtime is relatively minor, [as is the case here], an attorney may reasonably recover more than the employee." *Thompson v. United Stone, LLC*, 2015 WL 867988, *2 (E.D. Tenn. Mar. 2, 2015) (collecting cases). "Indeed, the Sixth Circuit has 'upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages.'" *West v. Emeritus Corp.*, 2017 WL 2880394, *1-2 (M.D. Tenn. July 5, 2017) (Collier, J.) (recognizing "the relative

---

[3] "Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees" in an FLSA case "encourages the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134-35 (6th Cir. 1994); *United Slate*, 732 F.2d at 503 ("[T]ransfixion on the damages amount in establishing fees would penalize those litigants whose cases carry slight pecuniary damages, but which present instances of significant statutory violations"); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1647 (2018) (Ginsburg, J., dissenting) ("Expenses entailed in mounting individual [FLSA] claims will often far outweigh potential recoveries…."); *Orth v. Wisconsin State Employees Union, Council 24,* 546 F.3d 868, 875 (7th Cir. 2008) (recognizing that attorneys fee awards in FLSA collective actions are often larger than the damages awarded); *Rabetski v. Century Oaks of Appleton, Inc.*, 2018 WL 2694528, *3 (E.D. Wis. June 5, 2018) (awarding attorneys' fees exceeding plaintiff's wage-and-hour recovery by factor of more than 10, and recognizing that "the Seventh Circuit has approved an award for 'a fee 21 times as great as the damages that the plaintiff obtained.'"); *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 511 (S.D.N.Y. 2011) ("In FLSA cases, like other discrimination or civil rights cases, the attorneys' fees need not be proportional to the damages plaintiffs recover, because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights.").

lack of correlation between plaintiffs' recoveries and attorney's fees in FLSA cases;" awarding $46,006.31 in attorneys' fees and costs and $8,993.69 in damages).

Counsel for Plaintiffs note that no expenses will be deducted from the amounts recovered by Plaintiffs. Any expenses incurred will be deemed covered by the attorney's fees and additional costs paid to Plaintiffs' counsel. Specifically, Plaintiffs' counsel has spent approximately three hundred and fifty (350) hours litigating this matter including: thorough intake interviews with all Plaintiffs, in-depth analysis related to documents produced by Defendant, drafting declarations, drafting the Stipulation to Conditional Certification Documents, analyzing extensive records, consulting with an expert, administering a notice period, and negotiating this settlement. Plaintiffs' counsel will spend more hours finalizing this settlement and distributing the settlement proceeds. At an hourly rate of $400.00 per hour, Plaintiffs' Counsel would be entitled to $140,000.00. The requested attorneys' fees are therefore a fraction of this and well below the range of previously approved hourly-rates in similar class and collective action settlements. *See Fitzgerald*, 2020 WL 3621250 at *10 (approving hourly-rates for plaintiffs' counsel ranging from $325 to $600 in FLSA collective action); Order Approving Settlement, *Flatt v. LHC Gr., Inc.*, No. 16-00014 (M.D. Tenn. Mar. 1, 2017) (approving reasonable hourly rates charged by plaintiffs' counsel, ranging from $285 to $600).

The amount requested by Plaintiffs' Counsel includes all costs and is less than would be billed for comparable work to an hourly-paying client. Finally, after contested negotiation, Defendant has agreed to independently pay this amount as fees and costs and does not oppose Plaintiffs' Counsel's request. In a contested fee dispute, Plaintiffs' counsel would seek rates at or above this rate, but agreed to accept a lower amount solely to resolve this matter without further contested litigation over fees.

These considerations support the reasonableness of Plaintiffs' Counsels' requested fee award. *See Athan*, 2021 WL 805430 at *9 ("The fees are all the more reasonable given that they are the result of vigorous negotiations between the Parties and are less than the total lodestar actually incurred on this matter by Plaintiffs' Counsel."). Plaintiffs therefore respectfully request that their Plaintiffs' Counsel be awarded attorneys' fees, litigation expenses, and costs in the amount of $109,862.92.

Finally, the requested service award is appropriate here in light of the efforts made by Named Plaintiff to protect the interests of the Opt-in Plaintiffs, the time and effort he expended pursuing this matter, as well as the substantial benefit they bestowed on the Opt-in Plaintiffs. *See, e.g., Fitzgerald*, 2020 WL 3621250 at *11 (awarding $7,500 service payment to FLSA named plaintiff and $2,000 each to two Rule 23 class representatives for "substantially assist[ing] in the litigation by participating in client interviews and conferences with Class Counsel and by providing relevant documents"). Named Plaintiff regularly communicated with Plaintiffs' Counsel, assisted counsel with document analysis, reviewed documents, were instrumental in spreading word about this case in its infancy, and generally acted in a fashion that was consistent with a representative of the highest ethical standards. Named Plaintiff provided Plaintiffs' Counsel access to the underlying facts, which in turn led to a beneficial recovery for the Opt-in Plaintiffs. "The service payment[] Named Plaintiff[] seek[s] [is] similar to other collective and class action incentive awards approved by courts in this Circuit." *Id.* (collecting cases). Accordingly, "the requested service award[] [is] appropriate and reasonable," and should be approved. *Id.*

## CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court enter an order forthwith granting their Joint Motion approving the Parties' agreed-upon resolution of all of the
13

claims asserted in this FLSA action, and dismissing this action with prejudice based upon the Parties' agreement. The Parties will submit to the Court's CM/ECF inbox a proposed order granting the relief sought in this Joint Motion.

Dated: September 2, 2022.  Respectfully Submitted,

*s/ Robert E. Turner, IV*
J. Russ Bryant (TN BPR #33830)
Robert E. Turner, IV (TN BPR #35364)
Robert E. Morelli, III (TN BPR #037004)
**JACKSON, SHIELDS, YEISER, HOLT OWEN & BRYANT**
Attorneys at Law
262 German Oak Drive
Memphis, Tennessee 38018
Telephone: (901) 754-8001
Facsimile: (901) 754-8524
*rbryant@jsyc.com*
*rturner@jsyc.com*
*rmorelli@jsyc.com*

and

Nina Parsley (TN BPR #23818)
**PONCE LAW**
400 Professional Park Drive
Goodlettsville, TN 37072
*nina@poncelaw.com*

*Attorneys for Plaintiffs*

*/s/ Aron Z. Karabel*
Aron Z. Karabel (TN BPR No. 031828)
Frederick L. Conrad III (TN BPR No. 032043)
**WALLER LANSDEN DORTCH & DAVIS, LLP**
Nashville City Center
511 Union Street, Suite 2700
Post Office Box 198966
Nashville, Tennessee 37219-8966
Phone: 615-244-6380
*aron.karabel@wallerlaw.com*
trip.conrad@wallerlaw.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this the 2nd day of September, 2022 caused the forgoing Joint Motion for Settlement Approval to be filed via the Court's electronic case filing system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, including:

Aron Z. Karabel (TN BPR No. 031828)
Frederick L. Conrad III (TN BPR No. 032043)
**WALLER LANSDEN DORTCH & DAVIS, LLP**
Nashville City Center
511 Union Street, Suite 2700
Post Office Box 198966
Nashville, Tennessee 37219-8966
Phone: 615-244-6380
*aron.karabel@wallerlaw.com*
*trip.conrad@wallerlaw.com*

*s/ Robert E. Turner, IV*